IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   11-cr-00519-WYD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    PHILIP CHAOHUI HE,
    a/k/a Philip Hope,
    a/k/a Philip Chaohui,

    Defendant.

_____

**INDICTMENT**
18 U.S.C. § 371 Conspiracy to Violate the Arms Export Control Act and to Smuggle Goods From the United States
22 U.S.C. § 2778 Attempted Export of Defense Articles in Violation of the Arms Export Control Act
18 U.S.C. § 554 Smuggle Goods From the United States

_____

The Grand Jury charges:

    At all times relevant to this Indictment:

## Background Allegations

    1.    Defendant PHILIP CHAOHUI HE, a/k/a Philip Hope and Philip Chaohui ("defendant"), was acting on behalf of Sierra Electronic Instruments ("SEI").  The defendant was a citizen and national of the People's Republic of China ("PRC") and a lawful permanent resident of the United States.  The defendant resided in the United

States.

2.      SEI was located at Suite 220-A, 638 Webster Street, Oakland, California. SEI was a registered business with the State of California. The defendant was the only employee of SEI. SEI reported that its estimated annual sales in 2010 was $110,000.

*The Arms Export Control Act*

3.      In furtherance of world peace and the security and foreign policy of the United States, the Arms Export Control Act ("AECA") (Title 22, United States Code, Section 2778) authorizes the President of the United States ("the President") to control the export of "defense articles" by designating items, such as military aircraft and military aircraft components, on the United States Munitions List ("USML").

4.      The AECA and its attendant regulations, the International Traffic in Arms Regulations ("ITAR") (Title 22, Code of Federal Regulations, Sections 120-130), require a person to apply for and obtain an export license from the Directorate of Defense Trade Controls ("DDTC") of the United States Department of State before exporting arms, ammunition, or articles of war, which are all classified as defense articles, from the United States. The ITAR also prohibits the export or attempt to export from the United States of any defense article for which a license or written approval is required. It is the policy of the United States to deny licenses and other approvals for exports of defense articles destined for China in accordance with Title 22, C.F.R., Section 126.1(a).

5.      In an application for an export license, the exporter is required to state,

among other things, the nature of the defense articles to be exported, the end recipient of the defense articles, and the purpose for which the defense articles are intended.  These factors and others assist the DDTC in determining whether the export of the defense articles would further the security and foreign policy interests of the United States.

6. The defense articles which are subject to such licensing requirements are designated on the USML.  Those designations are made by the State Department with concurrence of the Defense Department.

7. Category XV(e) of the USML include spacecraft systems and associated equipment.  This category includes all varieties of satellites, including communication satellites, remote sensing satellites, scientific satellites, as well as radiation microelectronic circuits which meet certain characteristics and all designed or modified systems or subsystems, components, parts, accessories, attachments, and associated equipment for the articles in this category.

8. Programable read-only memory (PROM) devices serve to store the initial start-up for a computer system.  Static random access memory (SRAM) devices are used to store information in personal computer central processing units, hard drives and other applications in which information must be temporarily stored and retrieved at high speed.  PROMs and SRAMs used in satellite systems and other space-based applications must be able to withstand the conditions present in outer space.

9. Aeroflex Colorado Springs ("Aeroflex") was a company located in the State and District of Colorado that manufactured, among other things, radiation hardened

3

PROMs and SRAMs, with product numbers UT28F256QLE (Aeroflex item number 5962R9689110VXC-SMD) and UT9Q512K32E-SWC respectively, that are specifically designed for such applications (collectively, "integrated circuits"). The DDTC has certified that these Aeroflex integrated circuits are "defense articles" under Category XV(e) of the USML.

10. Since 1990, the U.S. government has maintained an arms embargo against the PRC that prohibits the export, re-export, or re-transfer of any defense article to the PRC. It is the policy of the United States and the U.S. Department of State to deny license applications and any other written requests or approvals for the export, re-export, or re-transfer of any defense articles on the USML.

11. At no time did the defendant apply for, receive, or possess a license to export defense articles of any description.

## COUNT ONE
18 U.S.C. § 371
*Conspiracy to Violate the Arms Export Control Act and to Smuggle Goods From the United States*

12. The Grand Jury re-alleges and incorporates by reference the Background Allegations of this Indictment.

## The Conspiracy

13. Beginning in or about May 2011 and continuing thereafter until in or around December 2011, in the State and District of Colorado and elsewhere, PHILIP CHAOHUI HE, a/k/a Philip Hope and Philip Chaohui ("defendant") and others known

and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated and agreed together, to commit the following offenses against the United States:

    a.    To willfully export and cause to be exported, without a license for such export issued in accordance with the Arms Export Control Act and the International Traffic in Arms Regulations, items designated as defense articles on the United States Munitions List, in violation of Title 22, U.S.C., Section 2778; and

    b.    To fraudulently and knowingly attempt to export and send from the United States, merchandise, articles and objects contrary to the laws and regulations of the United States and to facilitate the transportation and concealment of such merchandise, articles and objects prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, in violation of Title 18, U.S.C., Section 554.

## Manner and Means of the Conspiracy

14.    In or about May 2011, the defendant arranged a purchase of over 300 integrated circuits with Aeroflex in the State and District of Colorado.  Aeroflex is a manufacturer of integrated circuits for the aerospace, defense, industrial, and security markets.  Integrated circuits manufactured by Aeroflex are space-qualified and radiation-hardened semiconductor products that are used in satellite communications.  The integrated circuits are export-restricted "defense articles" under the AECA and Category XV(e) of the USML.

15. On or about April 28, 2011, an unindicted co-conspirator caused two wire transfers totaling approximately $489,720 to be sent from a bank in the PRC to the Defendant's bank account in California. The defendant transferred this amount to a checking account from which he drew a check as payment for the integrated circuits purchase. On or about May 9, 2011, the defendant provided payment in full, approximately $549,654, at the time he placed the order with Aeroflex.

16. On or about May 17, 2011, in response to an inquiry by Aeroflex, the defendant provided Aeroflex with a document entitled "Department of State End User Certificate & Accountability Plan" which stated that SEI agrees to comply with U.S. export laws governed by the ITAR and that the items may not be transferred, transshipped or otherwise disposed of in any other country, without the prior written approval of the U.S. Department of State.

17. On or about May 31, 2011, the defendant, in response to Aeroflex's stated concern of the possibility that SEI would export the integrated circuits outside United States and violate the law, the defendant stated to Aeroflex representatives that he did not have any plan to export the integrated circuits. The defendant stated that the purchaser and end-user was SEI and that the integrated circuits were for domestic users.

18. During the period of the purchase of the integrated circuits, the defendant corresponded frequently, both through telephone calls and e-mail communication, with unknown and unidentified co-conspirators. The corresponding telephone calls were to

phone numbers originating in the PRC.  The e-mail communications involved addresses linked to PRC service providers.

19.     On or about December 11, 2011, the defendant drove to the Port of Long Beach, California.  The defendant entered a controlled access point using a Transportation Worker Identification Credential (TWIC) issued by the  Transportation Services Administration.  The TWIC allows for unescorted access in the Port and onto vessels.  The defendant met with two men in front of a docked ship bearing a PRC flag.  The PRC-flagged ship was registered to Zhenhua Port Machinery Company LTD, a subsidiary of the PRC state-owned corporation China Communications Construction.  The ship had recently arrived from Shanghai, PRC and was scheduled to return to Shanghai, PRC on December 15, 2011.  One of the men that the defendant met with possessed a PRC passport.

20.     The defendant concealed 200 integrated circuits from the Aeroflex shipment in several plastic infant formula containers placed inside five boxes which were sealed and labeled as "milk powder" written in Chinese.  The boxes were in the trunk compartment of the defendant's vehicle.

### Overt Acts in Furtherance of the Conspiracy

21.     In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the District of Colorado and elsewhere:

  a. On or about May 9, 2011, the defendant sent the full payment to Aeroflex in the State and District of Colorado in the amount of $549,654 to initiate the manufacture and eventual delivery of the integrated circuits.

  c. On or about July 28, 2011, the defendant received the first of two shipments of integrated circuits from Aeroflex in Colorado to the SEI office located in Oakland, California. The first shipment consisted of approximately 112 integrated circuits, part number UT28F256QLE (Aeroflex item number 5962R9689110VXC) which were defense articles within Category XV(e) of the USML and restricted for export from the United States.

  d. On or about August 5, 2011, the defendant or a co-conspirator drove a motor vehicle registered to the defendant across the United States border into Tijuana in the Republic of Mexico.

  e. On or about September 8, 2011, the defendant traveled by plane from Tijuana, Mexico through Mexico City to Shanghai, PRC.

  f. On or about October 6, 2011, the defendant received a second shipment of integrated circuits from Aeroflex. The order consisted of approximately 200 integrated circuits, part number UT9Q512K32E-SWC which were defense articles within Category XV(e) of the USML and restricted for export from the United States.

  g. On or about December 11, 2011, the defendant drove his vehicle to the Port of Long Beach, California. Concealed in the trunk compartment of the defendant's vehicle were 200 integrated circuits with the part number UT9Q512K32E

printed on each.  The integrated circuits were secreted inside several plastic infant formula containers and placed inside five separate boxes for delivery to the PRC.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
22 U.S.C. § 2778
*Attempted Export of Defense Articles in Violation of the AECA*

22.     The Grand Jury re-alleges and incorporates paragraphs 1-11 and 14-21.

23.     From in or about May 2011 through December 2011, in the District of Colorado and elsewhere, the defendant willfully attempted to export and to cause to be exported, without a license for such export issued in accordance with the Arms Export Control Act and the International Traffic in Arms Regulations, an item designated as a defense article on the United States Munitions List, that is, radiation hardened programmable read-only memory microchips and static random access memory devices, with product numbers UT28F256QLE and UT9Q512K32E-SWC.

All in violation of Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 123.1 and 127.1.

## COUNT THREE
18 U.S.C. § 554
*Unlawful Export of Defense Articles in Violation of the AECA*

24.     The Grand Jury re-alleges and incorporates paragraphs 1-11 and 14-21.

25.     Beginning in or about May 2011 and continuing through on or about December 11, 2011, in the District of Colorado and elsewhere, the defendant fraudulently and knowingly attempted to export and send from the United States, merchandise, articles

and objects, specifically an item designated as a defense article on the United States Munitions List, that is, radiation hardened programmable read-only memory microchips and static random access memory devices, with product numbers UT28F256QLE and UT9Q512K32E-SWC, and the defendant facilitated the transportation and concealment of such merchandise, articles and objects prior to exportation, knowing the same to be intended for exportation contrary to Title 22, United States Code, Section 2778 and Title 22, Code of Federal Regulations, Sections 123.1 and 127.1.

All in violation of Title 18, United States Code, Section 554.

A TRUE BILL:

 Ink signature on file in the Clerk's Office
FOREPERSON

JOHN W. WALSH
United States Attorney

s/John M. Canedy
By: John M. Canedy
Special Assistant U.S. Attorney
United States Attorney's Office
1225 17th Street, Suite 700
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0403
E-mail: john.canedy@usdoj.gov
Attorney for the Government